FILED

11/07/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0592

DA 16-0592

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 272N

IN RE THE PARENTING PLAN FOR:

N.C.D., a minor child,

TIMOTHY KANE DAVIS,

        Petitioner and Appellee,

   And

DEBORAH SUSAN SMITH,

        Respondent and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                     In and For the County of Lewis and Clark, Cause No. BDR 2015-380
                     Honorable DeeAnn Cooney, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Deborah S. Smith, Self-Represented, Helena, Montana

        For Appellee:

                Robyn L. Weber, Weber Law Firm, Helena, Montana

                             Submitted on Briefs:  October 11, 2017

                                     Decided:  November 7, 2017

Filed:

                                _____
                                         Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Deborah S. Smith (Mother) appeals from a parenting plan ordered by the First Judicial District Court, Lewis and Clark County. We affirm.

¶3 Mother and Timothy K. Davis (Father) are the parents of one child, N.C.D., born in 2002. Mother and Father never married and ended their relationship shortly after N.C.D.'s birth, but both parents have been involved with N.C.D.'s care since she was born. When she was an infant, N.C.D. lived primarily with Mother while spending some nights with Father. As she grew older, N.C.D. began to spend more time with Father. By the time N.C.D. started fourth grade in 2011, the parties shared parenting time fifty-fifty. N.C.D. followed the fifty-fifty residential schedule from 2011 until 2016 except for two short disruptions during which Mother consented to N.C.D. residing primarily with Father. This parenting arrangement was formulated by mutual agreement; no parenting plan was in place for N.C.D. until October 2015, when the District Court ordered an interim parenting plan. Similarly, financial support for N.C.D. was determined by the parties' informal mutual agreement until the District Court ordered Father pay Mother temporary child support in October 2015. The parties deliberately chose an informal method of paying and receiving child support. Mother is an attorney and certain years

2

were more lucrative than others—Father would generally provide financial help upon Mother's request. By the June 20, 2016 hearing, Mother had obtained a position as an Assistant Appellate Defender, earning approximately $73,000 per year. Father worked for the Department of Natural Resources and Conservation, earning approximately $100,000 per year.

¶4     In the summer of 2015, the parties' informal arrangements began to deteriorate. Mother asked Father for a lump sum of $10,000 and $1,800 per month in child support. Father paid Mother $1,700 of the requested amount and at that point decided to pursue a court-ordered parenting plan that would, ideally, allow N.C.D. to live primarily with him. To effectuate the change, Father commenced this parenting action in July 2015, when N.C.D. was 13 years old.

¶5     In October 2015, the parties stipulated to an interim parenting plan and interim child support payments. The interim parenting plan provided a fifty-fifty residential schedule for N.C.D. and the interim child support order required Father to pay Mother $198 per month. The District Court held a hearing on June 8, 2016, and June 20, 2016, during which Mother and Father both presented evidence pertaining to parenting and child support. The District Court subsequently issued Findings of Fact, Conclusions of Law, and Parenting Plan Order (Parenting Plan) on September 13, 2016. Mother appeals the Parenting Plan.

¶6     This Court reviews a district court's findings of fact supporting a parenting plan for clear error. *In re M.C.*, 2015 MT 57, ¶ 10, 378 Mont. 305, 343 P.3d 569 (citing *Woerner v. Woerner*, 2014 MT 134, ¶ 11, 375 Mont. 153, 325 P.3d 1244). A finding of

3

fact is clearly erroneous "if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if our review of the record leaves us firmly convinced that the district court made a mistake." *In re M.C.*, ¶ 10 (citing *In re Custody of D.M.G.*, 1998 MT 1, ¶ 10, 287 Mont. 120, 951 P.2d 1377). Conclusions of law are reviewed for correctness. *In re M.C.*, ¶ 10 (citing *Guffin v. Plaisted-Harman*, 2010 MT 100, ¶ 20, 356 Mont. 218, 232 P.3d 888). We afford trial courts "broad discretion when considering the parenting of a child, and we will not disturb the court's decision absent a clear abuse of that discretion." *In re M.C.*, ¶ 10 (quoting *Woerner*, ¶ 12) (internal quotations omitted). An abuse of discretion occurs when a court "acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason, resulting in substantial injustice." *In re M.C.*, ¶ 10 (citing *Guffin*, ¶ 20).

¶7 First, we consolidate and address numerous issues raised by Mother wherein she argues the proceedings violated her right to due process by interfering with her fundamental right to parent; in particular, that five of the District Court's rulings denied her due process of law and caused her prejudice. The District Court had broad discretion in ruling on the particular motions made by Mother. Accordingly, we will only reverse if the court acted arbitrarily, failed to employ conscientious judgment, or exceeded the bounds of reason. *In re M.C.*, ¶ 10. Mother argues the District Court improperly denied her motions to extend deadlines, vacate the notice of her deposition, and continue the trial. Father filed his petition for a parenting plan in July 2015. Parenting plan proceedings receive priority hearing dates, § 40-4-216(1), MCA, and in March 2016 a hearing was set for June 8, 2016. In May 2016, a supplemental date of June 20, 2016,

4

was reserved in case more time was needed. Mother filed multiple motions to move the June 8, 2016, hearing, which the District Court did not abuse its discretion in denying. The District Court properly considered Mother's motions and exercised conscientious judgment in denying them as evidenced by its May 25, 2016, order stating, "The Court finds no legal basis to provide [Mother] the relief requested. A hearing is scheduled . . . for June 8, 2016. At that date, the Court will hear from both parties and address the issues raised accordingly. Prior to the hearing, the Court will not consider any further motions . . . ." Mother also argues the District Court improperly denied her motion to prioritize issues concerning parenting time over financial matters at the June 8, 2016, hearing. The Court did not abuse its discretion in deciding to address both parenting and financial issues at the hearing, as the hearing was scheduled in March 2016 and both issues were pertinent to the parenting action. Mother argues the District Court improperly granted Father's ex parte motion for an order placing N.C.D. with Father during the school week pending further order of the court. The District Court did not abuse its discretion in ordering that schedule—Mother acquiesced to Father being the residential parent for the school year and the record establishes it was in N.C.D.'s best interest to reside primarily in one household during the school year. Mother argues the District Court improperly issued a supplemental order regarding the Parenting Plan. The District Court inadvertently failed to convert the Parenting Plan into an order that could be enforced. Thus, the District Court did not abuse its discretion by approving the supplemental order because it was simply necessary to effectuate the court's own findings and conclusions. Finally, Mother argues the District Court improperly failed to

adjudicate Mother's motion to stay the final parenting plan and motion to quash or stay the supplemental order. The District Court is not required to rule on such motions by a certain date and therefore did not abuse its discretion by not yet ruling on them.

¶8 Second, Mother argues (1) her motion to revise interim child support was improperly denied by the District Court; (2) she is entitled to past child support as a matter of law and § 40-6-116(4)(c), MCA, is unconstitutional; and (3) the District Court erred in when it denied her request for a variance for her current child support obligation to Father. As to interim child support, the Court did not abuse its discretion in continuing Father's payment of $198 per month to Mother throughout the parenting proceeding because the amount was calculated pursuant to the Montana Child Support Guidelines and initially stipulated to by the parties. The District Court also did not err in denying Mother past child support because the parties shared parenting time equally post-2011 and prior to 2015 had an informal agreement in which Father provided support when requested by Mother. Furthermore, the District Court did not analyze the constitutionality of § 40-6-116(4)(c), MCA, because the court did not need to apply the statute in its adjudication of this parenting proceeding. Because the District Court did not address the issue and because the constitutionality of the statute is not pertinent to this proceeding, we decline to address the constitutionality of § 40-6-116(4)(c), MCA. The District Court also did not abuse its discretion in denying Mother's request for a variance regarding her current child support obligation because the payment was calculated pursuant to the Montana Child Support Guidelines and the District Court did not act arbitrarily in finding Mother's reasons for requesting a variance insufficient.

6

¶9 Third, Mother argues the District Court improperly denied her motions requesting Father pay her professional fees and costs. A court may order one party to pay the other party's reasonable professional fees pursuant to § 40-4-110, MCA, "after considering the financial resources of both parties." At the hearing on June 20, 2016, Mother was about to start a job earning approximately $73,000 per year and Father was employed and earning approximately $100,000 per year. Based on the parties' available financial resources, we cannot conclude that the District Court abused its discretion by denying Mother's requests for attorneys' fees and costs and affirm the court's decision.

¶10 Fourth, Mother argues the District Court improperly denied her motion to compel discovery of certain financial information, alleging the requests were relevant to child support calculations. Mother asked for information regarding Father's and Father's spouses' non-taxable income, assets, and household expenses, including personal travel expenses. A court considers the financial resources of the parents in ordering child support payments. Section 40-4-204(2)(b), MCA. The District Court did not abuse its discretion in denying Mother's discovery requests because Father had already produced sufficient information from which child support could properly be calculated pursuant to the statutory and administrative guidelines. Mother's additional requests were not relevant to the calculation and we therefore affirm the District Court's decision.

¶11 Fifth, Mother argues that, at the parenting plan hearing, the District Court admitted irrelevant email correspondence between the parties regarding N.C.D.'s care. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it

7

would be without the evidence." M. R. Evid. 401. Relevant evidence is generally admissible, M. R. Evid. 402, unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence," M. R. Evid. 403. The District Court did not abuse its discretion in admitting the emails because the parties' correspondence is relevant to the parenting of N.C.D. and nothing in the record demonstrates the emails should have been excluded pursuant to M. R. Evid. 403.

¶12 Sixth, Mother contends the District Court's appointment of a guardian ad litem (GAL) was improper. A District Court may appoint a GAL to "represent the interests of a minor dependent child with respect to the child's support, parenting, and parental contact." Section 40-4-205(1), MCA. A GAL's duties include "informing and making recommendations to the court concerning the child's support, parenting, and parental contact following any investigation necessary to ascertain the facts relevant to such an inquiry." *In re Brockington*, 2017 MT 92, ¶ 23, 387 Mont. 260, 400 P.3d 205 (citing § 40-4-205(2)(a)-(c), MCA). In *In re Brockington* we emphasized that the role of a GAL, to represent the interests of a child, is distinct from the role of a mediator, "to be impartial and free from favoritism or bias, with no involvement in the subject matter of the dispute." *In re Brockington*, ¶ 26. Mother argues the District Court inappropriately blended the role of mediator and GAL by giving N.C.D.'s GAL the ability to serve as a tie-breaker in the event Mother and Father have a substantial disagreement regarding N.C.D.'s care. We disagree. A mediator "facilitate[s] communication, negotiation, and

8

*voluntary* decision making by the parents . . . ." *In re Brockington*, ¶ 26 (emphasis added). In contrast, N.C.D.'s GAL does not mediate disputes between the parents but rather was appointed to represent N.C.D.'s best interests when N.C.D.'s parents have disputes concerning N.C.D., which have been frequent. N.C.D. felt comfortable with her GAL. Also, N.C.D. stated that she did not feel safe with her Mother. Under these circumstances, the District Court did not abuse its discretion in granting Father's request to appoint a GAL to make decisions regarding N.C.D.'s care until the parties, if necessary, could be heard in court.

¶13 Seventh, Mother contends the District Court took her custody rights away when it designated Father as N.C.D.'s custodial parent. The District Court designated Father N.C.D.'s custodial parent "[f]or the purpose of all other state and federal statutes which require a designation or determination of custody" but clarified that the designation "shall not affect either parent's rights and responsibilities under this parenting plan." Pursuant to § 40-4-234(2)(a), MCA, a final parenting plan must include a provision designating "a parent as custodian of the child, solely for the purposes of all other state and federal statutes that require a designation or determination of custody, but the designation may not affect either parent's rights and responsibilities under the parenting plan." The District Court followed Montana law by designating one parent, in this case Father, as N.C.D.'s custodial parent. N.C.D. spends the majority of her time with Father and the District Court's order specifically stated Mother's rights and responsibilities were not affected by the custodial designation. Thus, the District Court did not abuse its discretion in designating Father as custodial parent.

¶14 Eighth, Mother argues Father's motion to substitute Judge McMahon was not timely. It is unnecessary to address the timeliness of Father's motion to substitute, filed on January 24, 2017, as the District Court was divested of jurisdiction upon the filing of Mother's Notice of Appeal on October 5, 2016. Accordingly, this case is remanded back to Judge McMahon, who assumed jurisdiction of Judge Cooney's docket on January 1, 2017. The provisions of § 3-1-804, MCA, remain applicable should any further proceedings arise regarding the parenting of N.C.D.

¶15 Father requests this Court sanction Mother pursuant to M. R. App. P. 19(5) by ordering Mother to pay Father's costs and attorney fees in defending Mother's appeal. M. R. App. P. 19(5) authorizes this Court to sanction a party in an appeal determined to be "frivolous, vexatious, filed for purposes of harassment or delay, or taken without substantial or reasonable grounds." We decline to make such an order in this case.

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶17 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE